IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL KELLY and MICHAEL KELLY d/b/a KAFE KELLY'S, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:07-CV-2739-BBM |
| CITY OF HAPEVILLE; CHRIS MONTESINOS in his individual and official capacity as Planning & Zoning Manager for the City of Hapeville; and BOBBY CRAIG, in his individual and official capacity as Fire Marshal for the City of Hapeville Fire Department, | |
| Defendants. | |

**O R D E R**

This action is before the court on the Motion to Dismiss the Amended Complaint [Doc. No. 17], filed by Defendants, and the Motion for Preliminary Injunction [Doc. No. 2], filed by Plaintiff Michael Kelly ("Mr. Kelly").[1]

---

[1] Mr. Kelly filed this Motion on the same day he filed the lawsuit. The court set the Motion for hearing on November 9, 2007, but on November 7, 2007, cancelled the hearing until further notice. The Motion for Preliminary Injunction asks the court to enjoin the impending foreclosure of the restaurant at issue in this lawsuit, Kafe Kelly's. The Amended Complaint states that Kafe Kelly's is currently "in foreclosure status and is expected to be auctioned sometime in November." (Am. Compl. ¶ 102.) This paragraph was also in the original Complaint, filed in November of 2007. Presumably, the original Complaint referred to November of 2007. As such, Kafe Kelly's would already have been foreclosed upon, and the Motion for Preliminary Injunction is moot. Because the court ultimately grants Defendants' Motion to Dismiss the Amended Complaint,

I.    **Background**

The court's Order of March 27, 2008 contains a full recitation of the facts based on the original Complaint. The court now recites the relevant facts as stated in Mr. Kelly's April 16, 2008 Amended Complaint (the "Amended Complaint"). On a motion to dismiss, the court accepts as true all factual allegations set out in the Plaintiff's Complaint. See Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Except as otherwise noted, the following facts are taken from the Amended Complaint. Therefore, the following account does not constitute findings of fact by the court.

Around May of 2005, Mr. Kelly applied for a building permit to build a barbeque restaurant called Kafe Kelly's at 3259 Dogwood Drive, in the City of Hapeville, Georgia ("Hapeville," or the "City"). Kafe Kelly's opened for business around November of 2005. Around January of 2006, Kafe Kelly's applied to sell Georgia Lottery tickets. Around March or April of 2006, Kafe Kelly's began cooking barbeque outdoors on a mobile barbeque pit grill (the "Outdoor Grill").

"In or around" August 2006 (Am. Compl. ¶ 42), Defendant City Planning and Zoning Manager Chris Montesinos ("Mr. Montesinos") and Defendant Fire Marshal

---

Mr. Kelly has failed to prevail on the merits of his dispute with Defendants, and his Motion for Preliminary Injunction is denied for this reason as well.

Bobby Craig ("Mr. Craig") attended a meeting with Mr. Kelly. City Code Enforcement Officer Frank Winfrey ("Mr. Winfrey") was present. At the meeting, Mr. Montesinos, Mr. Craig, and Mr. Kelly agreed to a plan by which Mr. Kelly would place the Outdoor Grill in an area at Kafe Kelly's that the parties anticipated would be acceptable to the City Council. Mr. Kelly sought approval of a variance based on this plan.

In September 2006, the Georgia Lottery approved Kafe Kelly's application to sell lottery tickets. On October 13, 2006, Kafe Kelly's began to sell Georgia Lottery tickets. That week, Mr. Montesinos and Mr. Winfrey told Mr. Kelly that he had to stop selling the tickets. Within two days, Mr. Kelly contacted the Georgia Lottery to complain that the City had told him to stop selling Georgia Lottery tickets. The following day, a representative of the Georgia Lottery contacted Mr. Montesinos and Mr. Winfrey and told them that Kafe Kelly's had the right to sell the tickets.

Shortly thereafter, the City began to write Mr. Kelly up for various infractions. On October 17, 2006, the City issued Mr. Kelly a written notice that use of the Outdoor Grill violated the City Code.[2] On that same day, the City issued a written

_____

[2]Mr. Kelly claims that "Kafe Kelly's use of the [Outdoor Grill] was of a conforming use." (Am. Compl. ¶ 53.) He bases this conclusion on an allegation that the City did not object to another individual's nonconforming use of her restaurant, namely, showing movies on the outside wall. Mr. Kelly conceded dismissal of his equal protection claim. The court finds that the City's failure to

notice to him that selling the Georgia Lottery tickets violated the City Code.   On October 19, 2006, the Alcohol Review Board (the "ARB") issued five minor infractions against Kafe Kelly's, affecting its liquor license.

On October 26, 2006, the City Council held a meeting at which the proposed variance was discussed.   Although Mr. Montesinos and Mr. Craig had previously agreed to the proposed variance, Mr. Montesinos recommended that the City Council deny Mr. Kelly's request for a variance, contending that it "would constitute a legal nonconforming use and expanded use."   (Id. ¶ 58.)   The City Council reserved ruling until the City Attorney rendered an opinion.

On October 31, 2006, Mr. Montesinos, not the City Attorney, issued an opinion that "Mr. Kelly's use of the [Outdoor Grill] on the site of the restaurant would constitute a prohibited expansion of a nonconforming use."   (Id. ¶ 60.)   The City Council denied the request for a variance based on Mr. Montesinos's recommendation.   Mr. Kelly appealed, and the City Council rendered a decision,[3] purportedly based on a report by the City Attorney.   The decision stated that the Outdoor Grill "constituted a prohibited expansion of a nonconforming use."   (Id. ¶ 63.)   The City Council members told Mr. Kelly that an indoor wood grill would be

object to a completely different nonconforming use is irrelevant to Mr. Kelly's First Amendment retaliation claim.

[3]Mr. Kelly does not specify the date of the decision.

acceptable.  Mr. Kelly asked the City for the City Attorney's findings, but the City refused to provide them.

On November 2, 2006, the Code Enforcement Building Inspection Division, through Mr. Winfrey, issued a written statement to Mr. Kelly that his property passed inspection.  Mr. Winfrey gave Kafe Kelly's a passing grade and noted "no outstanding cases pending."  (Id. ¶ 69.)

On or around May 2007, Mr. Kelly began to use an indoor wood grill (the "Indoor Grill") at Kafe Kelly's.  On June 27, 2007, the City, through Mr. Craig, issued a letter to Mr. Kelly ordering him to stop using the Indoor Grill.  On June 28, 2007,[4] the City shut down Kafe Kelly's operation of the Indoor Grill, citing several deficiencies that rendered its use a violation of the City Code.  In August of 2007, Mr. Kelly corrected the identified deficiencies.  Mr. Kelly called Mr. Craig twice, and left a message on his voice mail stating that the deficiencies had been remedied and asking Mr. Craig to return to Kafe Kelly's to inspect the Indoor Grill.  Mr. Craig never responded.

On August 17, 2007, the ARB cited Mr. Kelly for failing to comply with alcohol requirements.  On August 21, 2007, Mr. Kelly attended an ARB meeting to respond

---

[4]The Amended Complaint states that this occurred on June 28, 2008, but because his Amended Complaint was filed before this date, this is necessarily a typographical error.

to the ARB's recommendation that Kafe Kelly's liquor license be revoked. At the meeting, Mr. Kelly told Mr. Craig that he had remedied the deficiencies related to the Indoor Grill. Mr. Craig said he would come to inspect the Indoor Grill.[5] The ARB revoked Kafe Kelly's liquor license. On September 19, 2007, Mr. Kelly appealed that decision.

Mr. Craig visited Kafe Kelly's on October 10, 2007. Mr. Craig told Mr. Kelly that the appeal of the ARB's decision to revoke Kafe Kelly's liquor license was denied.[6] He inspected the Indoor Grill and told Mr. Kelly that it was still not in compliance because it was not at least three feet from the grease fryers. Mr. Kelly denied this conclusion, and stated that the Indoor Grill was three feet from the grease fryers. Mr. Craig then stated that the fryers needed to be 16 inches apart from one another, although he had never mentioned that issue on previous inspections. Mr. Kelly responded that he could move one of the fryers, and mentioned to Mr. Craig that he had never before made that request. Mr. Kelly also asked Mr. Craig to provide documentation indicating that the fryers were not in compliance. Mr.

---

[5]Mr. Kelly claims that Mr. Craig never came by, but he later states that Mr. Craig did inspect the Indoor Grill on October 10, 2007.

[6]The Amended Complaint actually states that Mr. Craig "told Mr. Kelly that the ARB revoked his license" (Am. Compl. ¶ 83), but because the initial revocation was already on appeal, the court infers that Mr. Craig meant the appeal.

Craig responded that Mr. Kelly would have to remove the stove in order to use the Indoor Grill. He then cited Kafe Kelly's for other deficiencies that, according to Mr. Kelly, did not exist. Finally, Mr. Craig told Mr. Kelly that he would not inspect Kafe Kelly's again until Mr. Kelly produced a manifest list for Kafe Kelly's. Mr. Kelly produced the list. On October 22, 2007, Mr. Craig cited new deficiencies against Kafe Kelly's, which Mr. Kelly alleges were unsubstantiated.

As a result of the above actions, Kafe Kelly's had to stop using the Indoor Grill, which diminished Kafe Kelly's customer base and caused the restaurant to lose more than $133,000. Ultimately, Kafe Kelly's was forced to cease operations.

On November 5, 2007, Mr. Kelly filed a Complaint containing due process, equal protection, and First Amendment retaliation claims as well as a state tort claim. On January 4, 2008, Defendants filed a Motion to Dismiss. On March 27, 2008, the court dismissed all of Mr. Kelly's claims except for the First Amendment retaliation claim, and allowed Mr. Kelly to file an Amended Complaint as to that claim. The court specifically stated:

> Mr. Kelly should identify the particular actions he alleges were taken against him in retaliation for his protected speech, as well as each party he contends took an action in retaliation against him. If possible, Mr. Kelly should include the date on which he called the Georgia Lottery, the date on which the Georgia Lottery representative spoke with Mr. Montesinos and Mr. Winfrey, and the date on which the allegedly adverse actions were taken against him. To the extent it is not possible to include dates, Mr. Kelly should make clear the order in which each

> material event occurred.  Mr. Kelly must also be mindful of the
> Eleventh Circuit's heightened pleading requirement for actions
> brought against officials in their individual capacities pursuant to
> Section 1983.

(Mar. 27, 2008 Order 17.)  Mr. Kelly, through counsel, filed the Amended Complaint

on April 16, 2008.  Mr. Kelly's counsel moved to withdraw immediately thereafter

on April 25, 2008.  The court granted that motion on May 9, 2008.  Mr. Kelly entered

his *pro se* appearance on June 25, 2008. Meanwhile, Defendants filed a Motion to

Dismiss the Amended Complaint on April 30, 2008, which the court now considers.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion

to dismiss when a complaint fails to state a claim upon which relief can be granted.

To withstand a motion to dismiss, a complaint need not contain "detailed factual

allegations," but must "'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct.

1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Here, the court

must determine whether Mr. Kelly "has alleged enough facts to suggest, raise a

reasonable expectation of, and render plausible" his claims. Watts v. Fla. Int'l Univ.,

495 F.3d 1289, 1296 (11th Cir. 2007).  The court construes the Complaint in Mr.

Kelly's favor, and accepts the facts he alleges as true. M.T.V. v. DeKalb County Sch.

Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).  However, "a formulaic recitation of the

elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65. Thus, a wholly conclusory statement of a claim cannot, without more, survive a motion to dismiss. See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1303 (11th Cir. 2007) (citing Twombly, 127 S. Ct. at 1968).

The Eleventh Circuit imposes a heightened pleading standard for charges brought against an officer in his individual capacity under 42 U.S.C. § 1983. Swann v. S. Health Partners, Inc., 388 F.3d 834, 838 (11th Cir. 2004); Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1368 (11th Cir. 1998). To meet this standard, a plaintiff "must allege the relevant facts 'with some specificity.'" Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting GJR Invs., 132 F.3d at 1367). The heightened pleading standard assists the court in resolving the defense of qualified immunity at the earliest possible stage. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Magluta, 256 F.3d at 1284 ("[W]e must respect the rule that heightened specificity is required in civil rights actions against public officials who may be entitled to qualified immunity.").

III.   **Analysis**

The court first emphasizes that Mr. Kelly's due process and intentional infliction of emotional distress ("IIED") claims were dismissed in the court's March 27, 2008 Order, and are no longer before the court. Mr. Kelly's Amended

Complaint restates those claims, explaining: "Following the Defendants' Motion to Dismiss, the Court dismissed all of Plaintiff's claims except the First Amendment Retaliation claim, and ordered Plaintiff to amend his complaint as it pertains to the claim. The dismissed claims remain an issue and are subject to appeal." (Am. Compl. 1 n.1.) Similarly, in his response to the Motion to Dismiss the Amended Complaint, Mr. Kelly insists that the due process and IIED claims should not be dismissed. The court has already adjudicated the due process and IIED claims, and will not address them further. Mr. Kelly may appeal the dismissal of these claims when the court has issued a final Order in this matter. See CSX Transp., Inc. v. Kissimmee Util. Auth., 153 F.3d 1283, 1285 (11th Cir. 1998) ("Except in limited circumstances, the courts of appeals have jurisdiction for appeals from final orders only."). The only claim remaining in this action is Count II of the Amended Complaint, the First Amendment retaliation claim. The court now addresses that claim.

To show that his rights against retaliation for exercise of First Amendment Rights were violated, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423

F.3d 1247, 1250 (11th Cir. 2005).   Protected speech is adversely affected when "defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  Id. at 1254.  The causation inquiry is whether the plaintiff's speech was a "substantial" or "motivating" factor in the alleged retaliatory action.  Gattis v. Brice, 136 F.3d 724, 726 (11th Cir. 1998) (public employee case).

> A.    Claims Against the City

Section 1983 claims against a municipality need only satisfy the liberal notice pleading standards, not the heightened standards for claims against an officer in his or her individual capacity.    Swann, 388 F.3d at 837.    However, "[m]unicipalities . . . cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior."  Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003). A single act of a municipal officer subjects the municipality to liability only for "(1) acts which the municipality officially sanctioned or ordered; (2) acts of municipal officers with final policy-making authority as defined by state law; and (3) actions taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area."  Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 637 (11th Cir. 1991).  For the following reasons, Mr. Kelly's claim against the City fails.

1.      Allegedly Adverse Actions Taken by the ARB and Mr. Craig

Most of the actions Mr. Kelly claims were retaliatory were the actions of Mr. Craig or the ARB.  These actions include:  the ARB's five infractions issued against Kafe Kelly's on October 19, 2006; the ARB's citations of Mr. Kelly for failure to comply with requirements on August 17, 2007; Mr. Craig's June 27, 2007 letter; Mr. Craig's October 10, 2007 inspection; and Mr. Craig's October 22, 2007 refusal to inspect Kafe Kelly's.

Mr. Kelly has failed to set forth any facts from which the court could infer a plausible causal connection between his protected speech and these actions.  Mr. Kelly alleges that the day after he contacted the Georgia Lottery, a Georgia Lottery representative in turn contacted Mr. Montesinos and Mr. Winfrey, thereby putting them on notice that Mr. Kelly had complained.  However, Mr. Kelly does not allege such notice to Mr. Craig or the ARB.  Those parties cannot have been motivated by Mr. Kelly's exercise of his right to speak without knowledge of it.  Therefore, their allegedly adverse actions against Mr. Kelly cannot form the basis of a retaliation claim against the City.  See Smith v. Sec'y for Dept. of Corr., 252 Fed. Appx. 301, 304-05 (11th Cir. 2007) (affirming frivolity dismissal of prisoner's First Amendment retaliation claim where prisoner did not allege that those who took adverse action against him knew of his written grievance); Butler v. City of Batavia, 545 F. Supp.2d

289, 293 (W.D.N.Y. 2008) ("Circumstantial evidence of retaliation may be found *when defendants are aware that plaintiff has engaged in protected speech* and defendants' challenged behavior closely follows that protected speech.") (emphasis added, citation and internal quotations omitted); Econ. Opportunity Comm'n of Nassau County, Inc. v. County of Nassau, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000) (same); cf. Nisenbaum v. Milwaukee County, 333 F.3d 804, 807 (7th Cir. 2003) ("It is not enough for a plaintiff to show that a given defendant knows of protected speech; the plaintiff also must show that the speech, and the defendant in question, played a causal role in the adverse decision.").

### 2.    Other Allegedly Adverse Actions

The remaining actions Mr. Kelly alleges were taken in retaliation against him are:  (1) Mr. Montesinos's decision not to recommend a variance to use the Outdoor Grill at the October 2006 City Council meeting, and his written opinion embodying that decision; and (2) "the City's" issuance of two notices on October 17, 2006, that Kafe Kelly's was in violation of the City Code.

The City is not liable for Mr. Montesinos's alleged reneging on an agreement to recommend a variance.  See Matthews v. Columbia County, 294 F.3d 1294, 1298 (11th Cir. 2002) ("[B]ecause only [the public officer] was actually motivated by an unconstitutional consideration, the [city] cannot be held liable under Section 1983.").

That action does not fall within any of the three categories under which a municipality can be liable for an officer's actions.  See <u>Manor Healthcare</u>, 929 F.2d at 637.  Mr. Kelly has not alleged that the City had knowledge of any promise to recommend a variance, let alone that the City sanctioned that promise or Mr. Montesinos' later alleged retraction.  Nor has Mr. Kelly stated that the City ordered Mr. Montesinos to provide a written opinion.  Mr. Kelly has not described any City-wide policy or custom that would call for Mr. Montesinos to retaliate against Mr. Kelly.  Finally, Mr. Montesinos lacked final policymaking authority because he merely provided an opinion to the body with that authority.  See <u>Oladeinde v. City of Birmingham</u>, 230 F.3d 1275, 1295 (11th Cir. 2000) (official lacks final policymaking authority when meaningful administrative review of the decision exists); <u>Quinn</u>, 330 F.3d at 1325 (same).

Nor can the City be held liable for issuing the October 17, 2006 written notices.  As already explained, Mr. Kelly failed to state that any party other than Mr. Montesinos or Mr. Winfrey knew of Mr. Kelly's exercise of free speech.  Even construing the Amended Complaint in favor of Mr. Kelly,[7] the court cannot read into

---

[7]Although the court assumes it for purposes of the Motion to Dismiss, the record does not clearly indicate that the October 17, 2006 notices were issued after the Georgia Lottery contacted Mr. Winfrey and Mr. Montesinos.  Specifically, Mr. Kelly claims that he began selling lottery tickets on October 13, 2006, and Mr. Winfrey and Mr. Montesinos told him to stop "during th[at]

the Complaint that the October 17, 2006 notices were issued by a party with knowledge of Mr. Kelly's call to the Georgia Lottery. See Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) ("Although the court must take the allegations of the complaint as true when reviewing motions to dismiss, [it is] not permitted to read into the complaint facts that are not there.") (citation omitted). The court is even less inclined to do so where it expressly advised Mr. Kelly to identify the parties that took retaliatory actions against him. (See Mar. 27, 2008 Order 17.) Because none of the allegedly retaliatory actions can subject the City to liability, the First Amendment Claim against the City is dismissed.

B.     Claims Against Mr. Craig and Mr. Montesinos

The court dismisses the claim against Mr. Craig because, as discussed in the previous section, the Amended Complaint fails to allege that Mr. Craig had knowledge of Mr. Kelly's complaint to the Georgia Lottery. See, e.g., Smith, 252 Fed. Appx. at 304-05. The court now turns to the claim against Mr. Montesinos for his

---

week." (Am. Compl. ¶ 48.)  Mr. Kelly called the Georgia Lottery "within two days" of that (id. ¶ 49), and the Georgia Lottery allegedly contacted Mr. Winfrey and Mr. Montesinos the next day.  The earliest Mr. Winfrey and Mr. Montesinos could have been contacted, therefore, was October 17, 2006, but that assumes that Mr. Winfrey and Mr. Montesinos told Mr. Kelly to stop selling lottery tickets the Friday he began selling them or over that weekend, and Mr. Kelly called the Georgia Lottery on Monday morning.

decision not to recommend a variance at the October 2006 City Council meeting, and his subsequent written opinion.

    1.    Heightened Pleading Standard

As explained earlier, the Eleventh Circuit requires "some factual detail" for claims against an officer in his individual capacity pursuant to 42 U.S.C. § 1983. <u>Swann</u>, 388 F.3d at 838; <u>GJR Investments</u>, 132 F.3d at 1367.  Mr. Kelly must plead his claim against Mr. Montesinos with specific, non-conclusory allegations sufficient to overcome the defense of qualified immunity.  <u>See Dalrymple</u>, 334 F.3d at 996.  "A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  <u>Id.</u> (citation and internal quotations omitted).

The Amended Complaint does not contain the requisite detail to survive a Motion to Dismiss under the heightened pleading standard.  The chronology in the Amended Complaint is generalized and implausible.  <u>See Dalrymple</u>, 334 F.3d at 996; <u>see also Twombly</u>, 127 S. Ct. at 1974 (liberal notice pleading requires "enough facts to state a claim to relief that is plausible on its face").  In the original Complaint, the meeting in which Mr. Montesinos and Mr. Craig agreed to recommend a variance for the Outdoor Grill took place in October of 2006, shortly after Mr. Kelly was informed that his use of the Outdoor Grill was a code violation.  The court was surprised to discover that according to the Amended Complaint, that meeting

allegedly took place "in or around" *August* of 2006. (Am. Compl. ¶ 42.)  It was not until approximately two months later in October when "the City" inexplicably issued Mr. Kelly a written notice that the Outdoor Grill violated the City Code. Thus, Mr. Kelly appears to contend that the "August 2006" meeting took place to prepare for a City Council appearance before any Code violation was identified. Furthermore, Mr. Kelly did not provide any specifics of the meeting, merely stating that "the parties agreed to a plan they thought the City Council would approve." (Am. Compl. ¶ 42.)   No context is given for this plan, and no details of the agreement (such as an allegation that Mr. Montesinos actually agreed to recommend the plan before City Council) were provided.  Despite the court's instructions to be mindful of the heightened pleading requirement, Mr. Kelly has stated the facts in vague terms and failed to set forth a logical connection between events. Additionally, although the court accepts the Amended Complaint as true, see Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007), Mr. Kelly's blatant reordering of events from the original Complaint is a source of concern for the court.

Mr. Kelly also fails to state facts that would ascribe an unconstitutional motive to Mr. Montesinos with a heightened level of specificity. Mr. Montesinos's proffered reason for recommending denial, that Mr. Kelly's use of the Outdoor Grill was

nonconforming, appears legitimate as it was ratified by the City Council in its initial decision and again on appeal.  Nonetheless, Mr. Kelly asks the court to infer that Mr. Montesinos had a retaliatory motive based upon temporal proximity alone.  In light of the other problems with the Amended Complaint, and absent any detail about the conversation between Mr. Kelly and the Georgia Lottery representative or the conversation between the Georgia Lottery representative and Mr. Montesinos, the court declines to do so.  Cf. Dep't of State v. Ray, 502 U.S. 164, 179 (1991) ("We generally accord . . . official conduct a presumption of legitimacy.").  Although the Amended Complaint might pass muster without further elaboration under Rule 12(b)'s liberal standard, it does not contain the requisite level of detail to establish that Mr. Kelly's speech was a substantial or motivating factor under the heightened pleading standard.  See Dalrymple, 334 F.3d at 996.

> 2.    Qualified Immunity

Mr. Montesinos is also entitled to the defense of qualified immunity.  "To receive qualified immunity, a government official must first establish that he was acting within his discretionary authority."  Al-Amin v. Smith, 511 F.3d 1317, 1324 (11th Cir. 2008).  Then the burden shifts to the plaintiff to show first, that a constitutional right was violated, and second, that the right was clearly established at the time of the alleged violation.  Id.; Griffin Indus., Inc. v. Irvin, 496 F.3d 1189,

1199 (11th Cir. 2007) (on motion to dismiss).  Only decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the Georgia Supreme Court may clearly establish a constitutional right.  Marsh v. Butler County, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001).

Mr. Kelly's recitation of the facts demonstrates that Mr. Montesinos was acting within the scope of his discretionary authority when he recommended that the variance be denied.  See Holloman ex rel Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) (defining a discretionary act as one in which the actor is performing a legitimate job-related function through means that are within his power).  Therefore, Mr. Kelly bears the burden to show that Mr. Montesinos is not entitled to qualified immunity.  Griffin Indus., 496 F.3d at 1199.  He has not met that burden.

In holding that Mr. Kelly failed to meet the heightened pleading standard, the court determined that Mr. Kelly did not allege a constitutional violation with the requisite specificity.  Therefore, Mr. Montesinos is entitled to qualified immunity at the first step of the inquiry.  However, even if the court assumes that (1) Mr. Kelly's call to the Georgia Lottery was constitutionally protected speech; (2) Mr. Montesinos's recommendation that the variance be denied would deter a person of ordinary firmness from the exercise of First Amendment rights; and (3) the

chronology alone raises an inference of causation, the right allegedly violated was not clearly established.  In particular, Mr. Kelly has not pointed to any legal authority that would have provided Mr. Montesinos with fair warning under the circumstances that his conduct was unlawful, and the court has located none. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*.") (emphasis added, citation and internal quotations omitted).

In Vinyard, id. at 1350-52, the court set forth three ways in which a right may be clearly established, none of which apply here.  First, the First Amendment's statement that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances," U.S. Const. Am. I, does not give the proper notice.  See Griffin Indus., 496 F.3d at 1209.  Second, the general principle that an individual must be free from retaliation for engaging in protected speech, see, e.g., Hartman v. Moore, 547 U.S. 250, 256 (2006), does not establish with obvious clarity that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official

acted." <u>Vinyard</u>, 311 F.3d at 1351.  The question under <u>Bennett</u> of whether a given action would deter a person of ordinary firmness is a fact-specific inquiry.  <u>Smith v. Mosley</u>, No. 06-12119, --- F.3d ----, 2008 WL 2609353, at *5 (11th Cir. July 3, 2008).  Although Mr. Montesinos's decision to renege on an agreement to provide a favorable recommendation likely meets that standard, the court cannot say that <u>Bennett</u> establishes this with obvious clarity.  <u>See Griffin Indus.</u>, 496 F.3d at 1209 (finding no clearly established general principle because "the precise facts of a case are critical" in evaluating the sort of constitutional claim at issue).  Third and finally, the court located no precedent tied to materially similar facts, and Mr. Kelly cites none.  <u>Vinyard</u>, 311 F.3d at 1352.  Mr. Kelly has not overcome the affirmative defense of qualified immunity, so the case must be dismissed.

## IV.    Summary

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint [Doc. No. 17] is GRANTED.  Plaintiff's Motion for Preliminary Injunction [Doc. No. 2] is DISMISSED for the reasons stated.

IT IS SO ORDERED, this 22nd day of July, 2008.


s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE